Good morning, still. Good morning. May it please the court. My name is Dan Herbert and I represent Aldo Brown who is before this court as a criminal defendant just as he was at the district court a criminal defendant. I understand this point is obvious but I'm highlighting this fact because I don't believe that it was obvious at the district court level in this case. As this court well knows the Constitution requires that a criminal defendant be given a meaningful opportunity to present a complete defense. The Constitution holds it's a fundamental right to present witnesses in the recently cited the United States Supreme Court in a case of Horton which I cited in the brief where it says at a minimum a minimum criminal defendants have the right to put before a jury evidence that might influence the determination of guilt. Well help me with this then because Farrell's evidence seemed to be of two on the use of force and secondarily whether Brown's use of force was reasonable but the Thompson case says that local police procedures are not relevant to reasonableness under the Fourth Amendment and we generally do not allow experts to opine on the ultimate question. So what else could Farrell have said? Farrell's testimony was not limited to the subjects that that were cited by you with all due respect your honor. Farrell's testimony his qualified testimony would have been based upon his years as a police officer, a supervisor that reviewed thousands of use of force cases, his expertise in he's been recognized as an expert in court based upon. The question is not his expertise but what opinion he would offer. Right the ultimate opinion he certainly we wanted we sought that he offered the opinion that based upon all the all the factors everything the policy the the law the training the circumstances that Aldo Brown's actions were appropriate. So they did not constitute excessive force. Correct. That's what Thompson says is inappropriate. Right well I would say that Thompson does not does not necessarily say that and when I say that the government did a very good job of cherry-picking language out of Thompson and using that as a basis and the court certainly used that as well but there are important distinctions. First of all Thompson is a civil case it's a 1983 case which the analysis for Aldo Brown throughout the trial was really based upon a 1983 case because that's quite frankly what this is but the Thompson case that case is actually supportive of our issue for the inclusion of John Farrell's testimony. The Thompson case the civil case the 1983 case where the defendant police officer faced the the most serious sanction that he would receive some type of a monetary penalty which he could discharge in bankruptcy. In our case where we have an individual like Aldo Brown who is undisputed a honorable dedicated police officer that was doing his job on that day. If Aldo Brown were the the most heinous ruthless criminal police officer that this court has ever seen he would still be entitled to everything that we talked about regarding the Constitution but in light of the fact that here it's undisputed Aldo Brown was doing his job responding to the scene taking actions none of that is in dispute so the point is in this case it is critical that that he be provided the rights that he is entitled to. In Thompson directly to your point Thompson allowed expert testimony they allowed a sergeant from the Chicago Police Department training academy Sergeant Campbell to come in and provide testimony about the use of force policy exactly what John Farrell was going to provide testimony about. What Thompson did and what the government has relied upon somewhat out of context Thompson said well they wanted to call this agent from the Office of Professional Standards Jim Lucas the court said no we don't need to hear from Jim Lucas that's completely irrelevant to John Farrell's testimony with all due respect to Jim Lucas who I know he was he is an OPS investigator who was going to talk about the general orders and that's what the court focused on. The court focused on in this case they said that Sergeant Campbell answered who was the expert witness on use of force the same as John Farrell would have been. The court concluded that Sergeant Campbell the expert witness answered a number of questions regarding what use of force would have been reasonable in a situation exactly the same as the issue here. That's what we wanted John Farrell to do. It's exactly what we wanted him to do. The court in Thompson said the text of the CPD general orders that's not appropriate to get in the text to get in the actual general orders and they reason that because the general orders were merely guidelines but important in the court's reasoning they talked about testimony being ubiquitous in the trial regarding CPD policies. In our case we have we had nobody to talk about how Aldo Brown's actions were consistent with policy with training and with the nationally recognized use of force policy. It was absolutely devastating to Aldo Brown. Mr. Herbert, Mr. Farrell's observations would have been based primarily on his conversations with Mr. Brown right? I would disagree wholeheartedly. Well he didn't interview Howard and according to the district judge he didn't address inconsistencies between Mr. Brown's statements and the video itself. Because there were not any inconsistencies and as far... So that's that's an observation you think that's inappropriate that was made by the district court? Absolutely. Absolutely. And as far as interviewing Howard... I mean or bystanders. Did he talk to any? I mean to get a full context of what happened on that day, wouldn't Mr. Farrell have to have to assemble as much as possible of available observations? Your Honor, obviously as I've said this is a criminal case. The government, the United States government, had a vast amount of resources that they utilized towards this case. They had issued grand jury subpoenas for various witnesses to suggest that John gone out and interviewed people that were at the grand jury. I believe shifts the burden a little bit. Well no, I just, to buttress the weight that would be necessary for admissibility of an opinion, wouldn't it have to be based on as broad a factual observation as Mr. Farrell could have made? I would say this Your Honor. In a perfect world, yes, that would be exactly what should happen. But here, John Farrell, although he didn't interview these witnesses, and let's be realistic here. Had John Farrell gone out to interview these witnesses, I don't think the government would have been too happy about that. There probably would have been issues there, which the court recognizes. But John Farrell knew what these people said because it was in, it was essentially the charge was brought based upon what Mr. Howard said and what these witnesses said. So quite frankly, you could read the charges and you can listen to the state's or the government's proffer and you know exactly what these witnesses said, including the victim. So there was no need for John Farrell to interview anyone at this point. I see that my time is up. You had reserved two minutes. We use it all the time, but you may have those two minutes. Thank you very much. Ms. Romero. May it please the court, my name is Jessica Romero and I represent the United States. The defendant proffered at least three versions of Farrell's proposed testimony, expert testimony at trial, and the district court did not abuse its discretion in excluding all of them. Why was Officer that Farrell was barred from speaking on? It seems that the government had an opportunity to present evidence on reasonable use of force, but the defendant didn't. I'm interested in knowing why his testimony wasn't confined to report writing. His testimony was. So his testimony was confined to under the tactical response report, which was the basis for count two of the indictment, which alleged the defendant made a false statement. Essentially what this report does is set out what the actions of the subject, or in this case the victim, were and then what the corresponding use of force was. And they're categorized based on what's considered proportional and what's considered acceptable based on the training that the police officers receive. There's no testimony or consideration as to what's reasonable or not, but in order for the jury to understand for purposes of evaluating count two and whether the defendant falsely filled out that report, what the terms were and their relationship on that form. And that was the basis for his explanation of the different control techniques that police officers are taught and when they are taught that they can use them. So he never provided any type of opinion as to the reasonableness of the defendant's curriculum. And this is the way that the report reads. And these are the terms, which may be terms of art, as contained in the report. Essentially, there's really a fundamental common sense component to this case that can't be understated, which is basically that a video depicts a Chicago police department officer walk up to a man who, at his instruction, has lowered his pants and is lifting up his shirt and is standing still and just punches him in the face. That's what the evidence was at the trial. And that after he punches him in the face, he holds him by the neck and punches him in the ribs, drags him to the back of the store, hits him in the face once he's down on the ground, handcuffs him, searches him, removes a weapon from him. He gumps back and kicks him in the ribs. That's what the evidence was. And what the defense wanted was John Farrell to go through that video and give the jury reasons why, under a use of force model, the defendant was justified in doing that. Not only is that completely unreliable, unhelpful, but it was vouching. It was vouching for the defendant's versions of events regarding purported statements that were made by the victim. Why is it inappropriate for the defense in a criminal case to offer an explanation for the officer's actions? It's not inappropriate. It's inappropriate to provide opinion testimony that's unreliable, that's unhelpful, under the guise of... The district court didn't reject the expert on expertise grounds or reliability grounds, but on irrelevance grounds. Well, I think in this case, the type of expert testimony and subject matter is use of force, which this court and Smith has indicated. It's not a particularly complicated subject area. It is technical and it is specialized in some ways and some circumstances, in particular instances where there's the use of weapons or there is some type of struggle or aggression in the degree that's appropriate. But in an instance like this one, where there's just no provocation, there's no basis for a police officer to punch somebody in the face, it's not a particularly technical or complicated question. Now, that said, it's still proper for the defense and for the government to present evidence as to what control techniques are available, essentially what the court just indicated. But what's improper is to do that in a form that's intentionally biased, confusing, and in many ways, cumulative of what the evidence, the government's evidence, already was regarding police officers. Mr. Romero, if the video is as graphic as you portray it... It is, Judge. And I'm not trying to challenge your characterization. How could a feral testimony be prejudicial? In other words, you're talking about a common sense approach. The jury's going to see the video. Feral has a background in law enforcement. We're not challenging those credentials. Is it fair to say that a jury would, after seeing the video, be influenced in a way by somebody telling them what they saw is not what was portrayed? Is that the risk the government is worried about by having feral on the stand? I guess my answer would have two parts. Because the first one is, there's the risk, depending on which version of the proffered expert testimony was going to be used at trial. I'd like to address that first, and then just the general risk in terms of confusion and prejudice. With respect to the first part, the first version or the first proffered version of feral's testimony was essentially that, based on the defendant's out-of-court statements to Mr. Feral, Mr. Feral opined that specific verbal exchanges took place in the store, which justified the defendant walking up to a man who is not depicted speaking on the video and punching him in the face. The second version was, it was going to be basically the same analysis that he was going to consider the video, but the basis for his opinion was going to be on defendant's in-court testimony regarding what statements the victim made and what his understanding and perception of the victim's movements and threats were at the time. And then the latest, the last of the versions that was proffered was that it was going to be based on the video as well as the use of force model, and why the defendant's actions were consistent with this use of force model, which again bears, does not bear on the Fourth Amendment analysis at all. Under all three of them, the risk was not just that the defendant was going to be able to, I'm sorry, that Feral was going to be able to vouch for the liable, but it was also that they were going to be introducing and admitting statements potentially and making inferences on behalf of the defendant that were not supported by the actual data, by the actual video, by the testimony of the witnesses who were there. Well as to your first point, which talked about dialogue, that dialogue is captured? It is not. So it is, it's a video surveillance camera at a convenience store that has no audio. And I think ultimately one of the points... So you're challenging the accuracy of any dialogue that would have been reported by Mr. Feral as to what Mr. Brown said occurred? What I'm challenging is the reliability of the underlying data that Feral was going to rely on under all three of the versions that he was going to supposedly provide. And the problem with this is this. The defendant's arrest reports, which were created at the time of the incident, indicated one version of events, which was that he approached the victim at the convenience store. And the victim, by the way, was an employee at the convenience store. He was at work. This was in the middle of the day. He approached this employee within the store, and the employee said, I have weed on me. Oh, and he approached him for the purpose of a field interview. And the employee supposedly said, I got weed on me, and reached for his pocket. And as a result of that, the defendant saw a gun and felt he was compelled to act to protect himself. So that was version number one. Version number two, which was the out-of-court statements to Feral in July 2015, which were what was disclosed in the expert disclosure as the basis for his opinion, was that he approached the victim because he had heard a heated conversation between the victim and his partner. And as a result of the words that the victim was using with his partner, he approached the victim and asked him if he had a gun, and that the victim responded that he didn't, he had some weed, and that then the victim positioned himself so that the defendant could not see the gun or reach for the gun. And as a result, he acted. And then the third version, which was his testimony in court, was that at the time that he had to act to stun the victim and stop him from talking, it was because the victim was trying to incite a riot and trying to incite the other people who were in the convenience store to attack the police officers. So once again, the issue, and I agree, I think the issue of under 702 and 403 is pretty much the same in this case, which is, is it probative, is it helpful, and is it prejudicial because it's unreliable. And I think in light of this underlying data it was unreliable. In light of the fact that they only considered a portion of the data that was favorable to the defendant, it was unreliable. But to answer the court's original question, the government would then have been put in a position where I had to rebut a claim of law-abidingness by an expert of the defendant in that he had purportedly abided by the use-of-force model. This would have been unhelpful. It would have been a waste of time, and it would have been confusing to jurors who are not... Well, could Mr. Farrell at least have rebutted, if permitted, Mr. or Ms. Hyphandis' opinion about reasonableness of using force? No, Judge. Ms. Hyphandis did not opine. The government did not The government presented testimony of Hyphandis and Hatch to explain what the training was that the defendant received on reporting the use-of-force in arrest reports and tactical response reports, because Counts 2 and 3 of the indictment alleged that he had falsified those reports intentionally. So that testimony was confined to just how one submits after-action reports? The recruits taught at the Chicago Police Department Academy, what was the curriculum at the time that the defendant attended regarding completing reports on the use-of-force? They testified as fact witnesses, and that's one of the specific bases that even as the Crawford versions of... Well, you probably could get a stipulation to that, I guess, right? I mean, if it's just reflecting something in a manual... That's right, and not only that, but when the defendant testified in his own defense, he said he complied with his training. So there was never any defense raised that somehow he was mistrained and that he acted as a misunderstanding. Instead, the testimony was consistent. The curriculum at the CPD Academy was that they must provide truthful reports, they must document the use of force with specific terms, and then the government argued and presented evidence based on the video and the testimony of the in-court witnesses that the defendant did not do that, because instead, the terms that he used were inconsistent with what actually happened in the store. So if there are no further questions, we ask that the District Court be affirmed. Thank you. Thank you, Ms. Romero. Mr. Herbert. What we heard here was exactly what the government did at the criminal trial. Look at the video. That's all you need to look at. It's wrong. Well, something's improper here, because you heard a lot of arguments about how the government would have been put in this horrible position. Well, the government bore the burden of proof in this case beyond a reasonable doubt, and the government was up against Aldo Brown and the law offices of Daniel Q. Herbert, okay? So they bore that burden, and something happened here which is very telling. They talk about the risk of having Farrell testify. Well, guess what? They could have alleviated that risk. They ran jury, and they identified a potential expert witness in Larry Snelling. There was a deadline for us to disclose witnesses. We disclosed our expert witness. They chose not to disclose an expert witness. Why not? Because he couldn't give them the opinion that they wanted, and that bears out in the testimony. If you look at the cross-examination of Larry Snelling in the parts I was allowed to cross on him, he was starting to give testimony that was completely supportive of what John Farrell would have testified to. Of course, it was cross-examination. I was stuck within the confines of the questions asked of the government, and I was certainly cut off from developing it further, but something is fishy here. This witness, who was identified as a potential expert witness, didn't give an expert testimony. Why not? Because he couldn't. Because his testimony would have been the same as John Farrell's. And the fact that we weren't allowed to present John Farrell's testimony, and the fact that we couldn't get into the information that their proposed potential expert, we couldn't challenge that as a trial in this case. And we would just ask that the court take a look at this and rule on it, which we know you will, in the context of a criminal defendant, even if it's the worst human being out there, which he's not. Mr. Farrell, were you going to have Mr. Farrell describe the anxiety or fear or whatever you want to describe it that Mr. Brown faced because of the others in the store? I mean, what were the limits of what you were going to present with Mr. Farrell? Whatever the court presented, obviously, but... Yeah, but what were you seeking? One of the factors in John Farrell's analysis about the appropriateness of use of force, one of dozens of factors was the fact that there was multiple people that were not in handcuffs, they were in a bad neighborhood, and there was reports about being sold. So clearly, that was part of it, but John Farrell's testimony would have been based on a number of factors. It would have been based on the totality of the circumstances, and that could have been challenged in cross-examination easily. Thank you. Thank you, Mr. Herbert. Thank you, Ms. Romero. The case is taken under advisement.